ILLINOIS CENTRAL RAILROAD CO. v. JAMES R. MARLETT.

RAILROADS.   *Limited tickets.   Reasonable regulation.*

> The rule of a railway company limiting the use of local tickets to
> continuous passage within one day from the date of sale, and pro-
> viding for their redemption at full value if not used on that day,
> is a reasonable regulation, and a passenger who tenders such a
> ticket to a conductor after its expiration, and refuses to pay fare,
> may be ejected, although the price of the ticket was the maximum
> charge allowed by law.

FROM the circuit court of Madison county.

HON. ROBERT POWELL, Judge.

This was a suit brought by Marlett to recover damages for
an alleged wrongful ejection from a passenger train. The dec-
laration alleges that the plaintiff, a commercial traveler, pur-
chased from the railroad company, on the sixteenth day of
January, 1897, a ticket from Jackson, Miss., to Canton, Miss.,
paying therefor the price demanded, being three cents per mile,
and being the highest price charged, or allowed by law to be
charged, for such tickets, and that the ticket contained upon
its face a statement that it was "good only one day from the
date of sale." A copy of the ticket is filed as exhibit to the
declaration. The declaration then alleges that on the night of
January 21, 1897, the plaintiff got upon one of the defendant's
regular passenger trains at Jackson, Miss., to be transported
to Canton, Miss., and that, before entering the train, he exhib-
ited the ticket to an agent of the defendant, who was stationed
at the entrance of its cars for the purpose of inspecting tickets
of those desiring to embark on its trains, and that plaintiff was
permitted by said agent to enter the train, and no information
was given him that the ticket would not be honored by the con-
ductor; that before reaching Madison Station he tendered the

conductor the ticket, and the conductor refused to accept it, and demanded that he pay his fare, as the ticket was out of date; that the plaintiff refused to pay, and the conductor ejected him from the train at Madison Station, at about 1 o'clock A.M., in the darkness, and refused to hold the train long enough for plaintiff to purchase a ticket from Madison Station to Canton, and that he was left at Madison Station all night, without sleep, and was compelled to hire a horse in the morning and ride to Canton; that he had important business in Canton on that day, and did not arrive until about 9 A.M., in a condition so broken in body and mind that he was unfit to attend to business, and was delayed in Canton to the neglect of business elsewhere; that it was quite cold, and he suffered greatly from exposure; that one of the defendant's through freight trains passed Madison Station in the morning after his ejection from the passenger train, and he attempted to get permission to go to Canton on that train, but this was insultingly refused, and for all this he claims $5,000 damages.

The defendant demurred to this declaration upon the following grounds: (1) because it was shown by the declaration that the limitation on the ticket had expired, and that the face of the ticket warned the plaintiff that it would not be accepted for transportation at the time he undertook to ride on it; (2) there was no pretense that the plaintiff was misled in any way, or that any misrepresentation had been made to him in the sale of the ticket, or that he was not fully aware of the time limit on the face of the ticket, or that the attention of the servant of the defendant who admitted him to the train, was called to the fact that the ticket had expired, nor any averment that the conductor refused to carry him for the regular fare, or that such fare was offered by him; (3) that the declaration is double. The demurrer was overruled, and this action of the court is assigned for error. The defendant then filed two pleas—(1) the general issue; (2) a special plea in bar, setting up, in substance, the following: That on January 1, 1896, more than a year prior

to the date of the purchase of the plaintiff of the ticket in question, the defendant adopted a regulation which continued to be in force, and was in force from its adoption to and at the time the plaintiff purchased his ticket, limiting all one way local tickets issued by it to continuous passage, within one day from the date of sale. And at the same time provided that when patrons were unable to commence the journey as expected, agents were authorized to redeem, at full value, any tickets sold by them, if presented by the original purchaser on the date of sale, and after that time tickets would be redeemed on application to the general passenger agent of the defendant; that the said regulation, with the provisions for the redemption of said tickets, was printed in large type and posted conspicuously in all the offices of the defendant at which tickets were sold, and two of said notices were conspicuously posted at the window of the ticket office at Jackson, where the plaintiff purchased the ticket in question, and was so posted at the time the ticket was purchased, and had been continuously posted from the first day of January, 1896. One of which notices was filed as an exhibit to the plea and made a part thereof. That the regulation was adopted for the following reasons: (1) in order that the defendant might know on each and every day the number of passengers it would be required to transport on its trains, and in order that it might provide ample and sufficient accommodations for the traveling public; (2) in order to prevent frauds and impositions upon the defendant by persons holding tickets, riding twice on the same tickets, in case its conductors should fail, through oversight or otherwise, to take up a ticket; (3) to prevent frauds and impositions upon the defendant by its servants, and as a check upon them; (4) to prevent the sale or speculation in tickets by persons known as "scalpers," or others.

The plea avers that the regulation in regard to said tickets and the reasons for the same and the provision for the redemption of tickets not used within the limit, was well known to the public at large, and the plaintiff in particular, and that the

plaintiff undertook to ride on said ticket, as shown in the declaration, after the limit had expired, the ticket being a one-way local ticket, and that the plaintiff did not, on the date of the sale of this ticket or at any time thereafter, apply to the agent from whom he purchased the ticket or to the general passenger agent or to any other agent or officer of the defendant for the redemption of said ticket, which would have been done at full value if the application had been made as provided in said regulation.   This plea was demurred to by the plaintiff, and the demurrer was sustained, and this action of the court is assigned for error.

The testimony, while tending in the main to support the declaration, showed that the plaintiff did not buy the ticket from the company, but from an insurance agent three or four days after its issuance.   There was also no showing of anything improper in the manner of ejecting plaintiff, nor of any custom on the part of the company of having an employe at the entrance of its cars to inspect the tickets of passengers prior to their admission.   The defendant offered to show that the ticket in question would have been redeemed, if offered for that purpose, and this was excluded on the objection of the plaintiff.

The following instructions were asked by the defendant, and refused:  " 1. If the jury believe from the evidence that there was no insult or oppression in enforcing the regulation of the company disallowing transportation on the limited ticket presented by this plaintiff, then, in that case, the defendant cannot be punished with exemplary damages.

" 2.  The court instructs for the defendant in this case that the plaintiff can only recover such actual damages as appears in the evidence he has sustained.''

The following instructions, among others, were given for the plaintiff:  " 2.  The court instructs you that this is a proper case for the infliction of punitive and exemplary damages on the defendant.

" 3.  In estimating punitive and exemplary damages, you

can consider the refusal of defendant to carry plaintiff from Jackson to Canton upon his ticket, and the forcible putting him off of the train at Madison Station, and his unrest and loss of sleep and his exposure to the weather and his discomfort and suffering in body and mind from such exposure, and you will be justified in finding for the plaintiff in a sum not more than $5,000.''

The giving of these instructions, with others, for the plaintiff, is assigned for error. There was a verdict for the plaintiff for $1,750, and judgment thereon, from which this appeal is taken.

*Mayes & Harris*, for the appellant.

1. The right of railway companies to establish reasonable regulations for the safe conduct of their business, to employ the use of tickets, and to collect a higher rate from passengers who fail to purchase tickets, is well settled. *Southern R. R. Co.* v. *Kendrick*, 40 Miss., 374; Hutch. on Car., sec. 570; *Forsee* v. *Alabama, etc., R. R. Co.*, 63 Miss., 66. The reasonableness of the regulation under consideration is manifest without the citation of authority to support it, but it is abundantly supported by authority. 54 N. Y., 512; 20 So. Rep. (Ala), 391; 15 Fed. Rep., 57; 135 Mass., 407; 1 Allen (Mass.), 267; 63 N. Y., 101; 32 N. J. L., 309; 61 Barbour, 611; 46 N. H., 213; 67 Me., 163; 9 Am. & Eng. R. R. Cases, 348; 68 Ga., 219; 47 Iowa, 142; 40 Vt., 88; 64 Mo., 464; 67 Ill., 390; Hutchinson on Carriers, sec. 576; 4 Elliott on Railroads, sec. 1598; *F. & N. O. R. R. Co.* v. *Donelly*, 41 S. W. Rep., 147 (civil appeals of Texas, April 27, 1897), affirmed in supreme court of Texas, November 1, 1897 (42 S. W. Rep., 540). It will be seen from the foregoing that the fact that the ticket is sold at the regular rate cuts no figure, and, furthermore, they support the regulations, although there is no provision, as in the case at bar, for refunding the money.

2. It cannot be seriously argued that the exhibition of the ticket by the plaintiff to the employe stationed at the door of the

cars could be treated as a waiver of the conditions on the ticket, or constitute a new contract of carriage. It is held that a ticket agent cannot bind the company by a declaration that a limited ticket will be accepted for passage after the expiration of the ticket. 9 Am. & Eng. R. R. Cases, 348; 61 Bart., 611; 34 Myd., 532; 60 Ind., 533; 46 N. H., 213; 67 Me., 163; 40 Vt., 88; 1 Elliott on Railroads, secs. 217, 218; 4 *Ib.*, sec. 11598.

3. While we think, under the law and facts of this case, none of the plaintiff's instructions should have been given, and, while we insist that he was not entitled to recover anything, it is perfectly manifest that the second and third instructions given for the plaintiff are wholly indefensible. The second instruction tells the jury, without qualification, that the case is a proper one for the imposition of punitive damages, and the third then tells them that in estimating such punitive damages they would be justified in awarding $5,000 damages. It is settled in this state that such instructions are erroneous. *New Orleans, etc., R. R. Co.* v. *Burke*, 53 Miss., 200; *Chicago, etc., R. R. Co.* v. *Scurr*, 59 Miss., 456. It is true the instruction does not, in terms, tell the jury to award punitive damages, but it does tell them, without qualification, that it is a proper case for punitive damages, and they are then told that in awarding such damages they would be justified in awarding $5,000.

The erroneous view taken by the court below of the principles governing this case are made manifest and unmistakable by the refusal of the defendant's instructions. In one of them the court refused to instruct the jury that only actual damages could be recovered, and in the other refused to instruct that unless the act of the conductor was characterized by insult and oppression, punitive damages could not be awarded.

It is evident that the view of the court below was that whatever may have been the character of the conductor's act, the plaintiff was entitled to punitive damages, because the conductor refused to carry him on the ticket. There is no authority to support this view.

This court has said: "Common carriers are subject to the same rules as individuals as regards measure of damages, and, in the absence of wilfulness, recklessness or insult, punitive damages are not allowed." *Chicago, etc., R. R. Co.* v. *Scurr*, 59 Miss., 456.

*W. H. Powell*, for the appellee.

There are some authorities holding that a railroad company can limit the time in which a ticket can be used provided it is reasonable, but such a rule should not be recognized in this state, where there is no reduction in the price of the ticket. Is one day reasonable? All the courts hold that railroads can limit the time in which an excursion ticket can be used or where a ticket has been sold at a reduced price. Here is a consideration for the limitation—the reduction in price—but in the case at bar there was no reduction.

"A company may prescribe the train upon which a ticket issued for a special consideration shall be good." *Tharf* v. *Concord Railroad Co.*, 61 Vt., 378; 17 Atl. Rep., 791.

The following authorities hold the limitation good because of the reduction in price of the ticket: 40 Vt., 88; 11 Met. (Mass.), 121; 22 Barb. (N. Y.), 130; 31 Barb. (N. Y.), 556; 83 Texas, 61; 18 S. W. Rep., 321; 18 Am. & Eng. R. R. Cases, 304; 63 Md., 106; 26 S. C., 91; 1 S. E. Rep., 372; 25 Ohio, 70; 13 Am. Ry. Rep., 477, and many others.

The reduction in the price of the ticket is seen to be the consideration for the power to limit the ticket. Our own court, in *Wilson* v. *Railroad Co.*, 63 Miss., 355, says ordinarily a ticket is not a contract, but it may be, and often is, a contract, as where it is sold at less than the general rate, and is accepted, and is to be used and enjoyed on conditions therein specified. The reduced rate constitutes sufficient consideration for the restrictions, etc. See cases there cited.

It is fair to argue that this court would have held that, but for the reduction in price, the restrictions would not have been

sustained. And I now ask this court to affirmatively hold that where there is no reduction in the price, that there is no power in the railroad to limit the use of the ticket. Because the railroad had passed the regulation, it was no excuse to the conductor to eject the passenger. Along this line see *Kansas City, etc., R. R. Co.* v. *Riley,* 68 Miss., 765.

I take it that if the railroad had no power in this case to limit the time in which the ticket could not be used, then the expulsion of the appellee by the conductor was illegal, and the attendant circumstances justified the court in its instructions to the jury, and that the verdict of the jury for seventeen hundred and fifty dollars ($1,750) damages is not too high, and will not be disturbed. But should this court think the verdict is too high, rather than submit to a reversal on that ground, we will enter a remittitur, in the discretion of the court.

The appellee suffered from the wrong done him, mentally and physically, and the degree was passed upon by the jury. *Heirn* v. *McCaughan,* 32 Miss., 48, 49; *Chicago, etc., R. R. Co.* v. *Scurr,* 59 Miss., 456; *Wilson* v. *New Orleans, etc., R. R. Co.,* 63 Miss., 352.

Argued orally by *J. B. Harris,* for appellant.

WOODS, C. J., delivered the opinion of the court.

This action was perhaps brought, and was evidently tried, to test the right of a person to use a ticket which was no longer good in payment of passage by the terms upon its face. That a railroad company may make reasonable rules limiting the use of tickets sold by its agents, is too well and too universally settled in this country to require argument or citation of authority. Indeed, the able counsel for appellee in this court, can be hardly said to attempt to controvert the proposition, and it is unnecessary for us to waste time or words in maintaining that which text books and adjudications uniformly lay down as law. The doctrine will be found everywhere in the books and reports.

In this case, the appellee tendered a ticket, which was, beyond all doubt, out of date by three or four days, and this the appellee well knew. The conductor declined to receive it for transporting appellee, and, on refusal of the latter to pay fare, ejected him from the train. There is no hint in all the evidence that the conductor knew anything more than that the appellee was insisting on riding upon a ticket whose limit had expired. Nor is there any evidence of violence, insult or oppression on the part of the conductor in ejecting the passenger. On the case thus made, the appellee was not entitled to recover.

In this court the judgment below is sought to be upheld, not because a ticket once paid for is good for passage until used, and after the limitation fixed by its own terms has expired, but because of the fact that the appellee was admitted, on exhibiting the ticket in question to a flagman, to the cars. But there is no evidence that the railroad company had any rule or custom requiring intending passengers to exhibit tickets to a servant of the company, detailed for the purpose of examining and passing upon tickets, in order to admit or reject intending passengers. In addition, it does not appear anywhere in the evidence before us that the conductor was informed by appellee, or that he knew otherwise, that the appellee had been permitted by any flagman, or other authorized agent of the company, to board the train on the ticket whose limit had expired. It is manifest that the appellee was ejected from the train because he insisted upon his supposed right to ride upon a ticket which no longer entitled him to passage, by its own terms, and because he refused to pay fare. He thought he knew the law on this particular subject, and he was mistaken. We are dealing with the case made by the evidence on the trial below, and are not dealing with the case which, under the pleadings, might have been or might not have been made by evidence showing the custom of the company as to examination of tickets of intending passengers, and the duties of the agent of the company charged with that particular work, and knowledge by the con

ductor that such examination had been made in the present case, and that appellee had been admitted to the train by such authorized servant of the company after examination of his ticket.    We repeat, on the case made on the trial below, the appellee was not entitled to recover.    The judgment will be reversed, and the case remanded, when the appellee will have an opportunity to make out, if he can, the case argued before us, but not made in the court below.

*Reversed and remanded.*